UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

MADELYN P. GENSKOW,

        Plaintiff,

        v.                                    Case No. 19-C-1474

STACEY PREVOST, et al.,

        Defendants.

## DECISION AND ORDER GRANTING MOTION TO DISMISS

Plaintiff Madelyn P. Genskow filed this *pro se* action against Defendants Stacey Prevost, Nate Ness, Eddie Metoxen, and Brandon Van de Hei—each an officer of the Oneida Nation's police department—claiming that the defendants unreasonably and with excessive force removed Genskow from the meeting of the General Tribal Council of the Oneida Nation which was held at the Radisson Hotel on July 10, 2018. Presently before the court is the defendants' motion to dismiss (Dkt. No. 17) and Genskow's motion to add a defendant to her action (Dkt. No. 24). For the reasons that follow, the defendants' motion to dismiss will be granted and Genskow's motion to add a defendant will be denied.

## LEGAL STANDARD

The defendants have moved to dismiss this action under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. A Rule 12(b)(1) motion challenges the jurisdiction of this court over the subject matter related in the complaint. Fed. R. Civ. P. 12(b)(1). In this case, the defendants contend that the court lacks subject matter jurisdiction because Genskow's claims are barred under the doctrine of sovereign immunity. The question of sovereign immunity, however,

is not jurisdictional. *Meyers v. Oneida Tribe of Indians of Wisconsin*, 836 F.3d 818, 820 (7th Cir. 2016). Nevertheless, because a plaintiff's otherwise valid claims may be barred under the doctrine of sovereign immunity, the defense can be appropriately asserted in a motion to dismiss under Rule 12(b)(6). *Id.*

A Rule 12(b)(6) motion tests the sufficiency of the complaint to state a claim upon which relief can be granted. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990); *see* Fed. R. Civ. P. 12(b)(6). When reviewing a motion to dismiss under Rule 12(b)(6), the court must accept all well-pleaded factual allegations as true and draw all reasonable inferences in the light most favorable to the nonmoving party. *Gutierrez v. Peters*, 111 F.3d 1364, 1368–69 (7th Cir. 1997); *Mosley v. Klincar*, 947 F.2d 1338, 1339 (7th Cir. 1991). Rule 8 mandates that a complaint need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The plaintiff's short and plain statement must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While a plaintiff is not required to plead detailed factual allegations, he must plead "more than labels and conclusions." *Id*. A simple, "formulaic recitation of the elements of a cause of action will not do." *Id*. A claim is plausible on its face when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).

## ALLEGATIONS OF THE COMPLAINT

Genskow is a 77-year-old elder of the Oneida Nation, a federally recognized Indian tribe. *See* 83 Fed. Reg. 4235, 5238 (Jan. 30, 2018). She claims that the defendants, employees of the Oneida Nation and officers of the Oneida Police Department, used excessive force and harassed, intimidated, and embarrassed her when they removed her from a conference room at the Radisson

Hotel, a tribal building located on tribal land, in front of 1,500 tribal members during a General Tribal Council meeting held on July 10, 2018. Dkt. No. 1 at 3–4. During the meeting, Genskow says her microphone was silenced after she raised continuous calls for "Point of Order" because the Tribal Chairman refused to recognize her. The Chairman then directed the defendants to physically remove her from the meeting. Genskow alleges that the defendants each grabbed one of her limbs, carried her out of the room, and placed her outside the hotel. *Id.* at 3.

Genskow claims she sustained a personal injury requiring medical treatment during the removal, and also suffered humiliation and damage to her reputation. She alleges Defendant Prevost issued her three "bogus citations" for violations of the law, including one criminal citation. She claims these "sham charges" were dropped by the Brown County District Attorney after reviewing the General Tribal Council's meeting footage and body camera video captured by the defendants. Genskow seeks an award of $4 million, in addition to punitive damages and $5,000 in reimbursement for attorney's fees and court costs incurred in relation to the "spurious criminal citations that were intended to harass and intimidate the Plaintiff." She also requests an order barring the Oneida Police Department from issuing "bogus trespassing citations to federally-enrolled tribal members as a harassment tool" at General Tribal Council meetings. *Id.* at 4.

## ANALYSIS

### A. Sovereign Immunity

The defendants argue that the court must dismiss Genskow's action because it is barred under the doctrine of sovereign immunity and for failure to state a federal claim. Turning first to the threshold issue of sovereign immunity, the starting point is the principle that "Indian tribes are domestic dependent nations that exercise inherent sovereign authority." *Michigan v. Bay Mills Indian Comty.*, 572 U.S. 782, 788 (2014) (internal quotations omitted). Among the core aspects

3

of sovereignty that tribes possess is the common-law immunity from suit traditionally enjoyed by sovereign powers. *Id.* The interests served by the doctrine of tribal sovereign immunity are at their highest when a tribe exercises tribal authority over its own members on its own land. Indian tribes retain "'their original natural rights' in matters of local self-government." *Santa Clara Pueblo v. Martinez,* 436 U.S. 49, 55 (1978) (quoting *Worcester v. Georgia*, 6 Pet. 515, 559 (1832)). "Although no longer 'possessed of the full attributes of sovereignty,' they remain a 'separate people, with the power of regulating their internal and social relations.'" *Id.* (quoting *United States v. Kagama*, 118 U.S. 375, 381–82 (1886)). "They have power to make their own substantive law in internal matters . . . and to enforce that law in their own forums." *Id.* at 55–56 (internal citations omitted). In addition, tribal officers are also immune from suit when they act within their official capacity and within the scope of their authority. *Id.* at 59.

Genskow argues that the Tribal Chairman had no authority to remove her from the General Tribal Council Meeting when it was in session. When in session, she contends, the General Tribal Council is the governing body of the Tribe and only the Council can remove a tribal member. In ordering her removal for merely calling for a point of order, Genskow claims that the Chairman violated her First Amendment rights to free speech and assembly. The defendants, on the other hand, contend that Genskow's "continuous calls for 'points of order' were certainly disruptive of the meeting" and that the Chairman was justified in having her removed.

To the extent Genskow's suit is against the defendants in their official capacity and challenges the refusal of the Tribal Chairman to recognize her, the silencing of her microphone, and the order that she be removed from the General Council Meeting, it is barred under the doctrine of sovereign immunity. The exercise of federal jurisdiction over the Oneida Nation's ability to conduct the meeting of its governing body on its own land would be a blatant violation

4

of its sovereignty. The more difficult question is whether Genskow's suit against the individual tribal police officers for injuries she allegedly sustained during her removal is likewise barred.

In *Lewis v. Clarke*, the Supreme Court held that a tribe's sovereign immunity did not extend to the individual liability of a tribal employee sued in a common law negligence action for damages caused by his driving into the rear of another car on a public highway, even though he was acting in the scope of his employment at the time of the accident. 137 S. Ct. 1285 (2017). In so ruling, the Court was guided by the principles of sovereign immunity as they apply to actions seeking to hold state and local government officials liable for torts committed in the course of their employment and drew upon the distinction between individual- and official-capacity suits. "In an official-capacity suit," the Court noted, "the relief sought is only nominally against the official and in fact is against the official's office and thus the sovereign itself." *Id.* at 1291. Suits brought against an official in his or her personal capacity, on the other hand, "seek to impose *individual* liability upon a government officer for actions taken under color of state law." *Id.* (quoting *Hafer v. Melo*, 502 U.S. 21, 25 (1991)). Officers sued in their personal capacity come to court as individuals, and the real party in interest is the individual, not the sovereign. *Id.* Thus, the Court concluded, "sovereign immunity does not erect a barrier against suits to impose individual and personal liability." *Id.* In *Lewis*, the Court found no reason to depart from these rules in the context of tribal sovereign immunity and concluded that these same principles foreclosed Clarke's sovereign immunity defense. Thus, to the extent Genskow's suit is against the defendants in their individual capacity, it would seem under *Lewis* that they are not immune.

This case differs from *Lewis*, however, in that it is brought by a tribal member against tribal officers for acts that took place on tribal land. In *Lewis*, the action was for damages for personal injuries sustained by non-Indians on a claim for common law negligence arising out of

5

an automobile accident that occurred on a state highway. The Court emphasized the fact that the case was "simply a suit against Clarke to recover for his personal actions, which will not require action by the sovereign or disturb the sovereign's property." *Id.* at 1291 (quotations omitted). Here, by contrast, Genskow seeks to impose liability on tribal police officers who physically removed her from a meeting of the Nation's governing body on tribal land at the direction of the Tribal Chairman when she persisted in calling for a point of order despite the Chairman's refusal to recognize her. The allegations of her complaint and the relief she seeks, in the form of injunctive relief against the Nation and $4 million in damages, strongly suggest that her suit is in reality against the Nation. In *Lewis*, the Court cautioned that in making the determination whether the sovereign was the real party in interest, "courts may not simply rely on the characterization of the parties in the complaint, but rather must determine in the first instance whether the remedy sought is truly against the sovereign." *Id.* at 1290. By way of example, the Court observed that "if . . . an action is in essence against a State even if the State is not a named party, then the State is the real party in interest and is entitled to invoke the Eleventh Amendment's protection." *Id.* "For this reason," the Court noted, "an arm or instrumentality of the State generally enjoys the same immunity as the sovereign itself." *Id.*

In light of these considerations, the court concludes that Genskow's lawsuit is in reality a suit against the Nation and is thus barred under the doctrine of sovereign immunity. To allow the lawsuit to proceed would interject the court into the internal workings of the Nation and its governing body. If a tribal member can subject the Nation's police officers to a federal lawsuit whenever they are called upon to maintain or restore order to a meeting of its General Tribal Council or any other internal tribal dispute, the Nation's sovereignty will mean little. At the very least, tribal sovereignty must mean that Indian tribes are free to conduct the meetings of their own

governing bodies without the threat of a federal lawsuit every time they rule a disruptive member out of order and have him or her removed.

Genskow also argues, however, that the Nation has waived whatever immunity it might have under these circumstances. In a 2010 amendment to the Service Agreement between the Oneida Indian Tribe of Indians of Wisconsin, which has since changed its name to the Oneida Nation, and Brown County, officers of the Oneida Police Department were "deputized by the Sheriff of Brown County to enforce state law and keep the peace within the County pursuant to section 59.26(5) of the Wisconsin Statutes." Dkt. No. 19-1 at 9. This was done as part of the larger goal of ensuring cooperation between the County and the Nation in providing services and enforcing state law in an area with overlapping borders. *See Oneida Tribe of Indians of Wis. v. Vill. of Hobart*, 732 F.3d 837, 838 (7th Cir. 2013) ("The Indians' homes are not confined to one neighborhood. They are scattered throughout the village and as a result the Indian and non-Indian properties form an irregular checkerboard pattern. The village itself is an enclave in the tribe's reservation."). The Agreement, also referred to as the Law Enforcement Service Agreement (LESA), further provides that the governing body of the Tribe "has adopted a Resolution which (1) accepts liability for the acts of Oneida Police Department law enforcement officers while acting in the scope of their employment, and (2) waives the Tribe's sovereign immunity to allow enforcement of this liability in the courts of the State of Wisconsin." Dkt. No. 19-1 at 9. Genskow argues that the Nation's waiver of its immunity as part of its agreement with the County applies to her action against the defendants.

The Nation's waiver of its sovereign immunity is limited, however. The LESA "waives the Tribe's sovereign immunity to allow enforcement of this liability in the courts of the State of Wisconsin." *Id.* A United States district court is not a court of the State of Wisconsin. It thus

follows that, regardless of whether the Nation's waiver of its immunity extends to suits brought by its own members for actions taken on its own lands, it does not apply in this court. It thus also follows that Genskow's federal lawsuit against the defendants is barred.

**B. Failure to State a Claim Under § 1983**

Alternatively, even if the defendants are not immune, Genskow's complaint would nevertheless be dismissed for failure to state a federal claim. The complaint alleges that the defendants injured Genskow in violation of federal law. The statutory vehicle for individuals seeking relief for violation of federal rights is 42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988); *L.P. v. Marian Catholic High Sch.*, 852 F.3d 690, 696 (7th Cir. 2017). The general rule, however, is that tribal police officers do not act under color of state law within the meaning of § 1983. *R. J. Williams Co. v. Fort Belknap Hous. Auth.*, 719 F.2d 979, 982 (9th Cir. 1983). This follows because tribal police officers act under color of tribal law, and no § 1983 action can be maintained in federal court for persons alleging deprivation of constitutional rights under color of tribal law since Indian tribes are separate and distinct sovereignties and are not constrained by the provisions of the Fourteenth Amendment. *Martinez*, 436 U.S. at 56; *Twin Cities Chippewa Tribal Council v. Minnesota Chippewa Tribe*, 370 F.2d 529, 533 (8th Cir. 1967). In physically removing Genskow from the meeting, the defendants were acting at the express direction of the Tribal Chairman. In other words, they were acting under color of tribal authority. Any dispute Genskow has with the manner in which either the Chairman or the defendant tribal officers dealt with her must be resolved by the courts of the Oneida Nation.

8

*See Trial Court*, ONEIDA, https://oneida-nsn.gov/government/judiciary/trialcourt/ (last visited Apr. 6, 2020).

Genskow argues, however, that the defendants were also acting under color of state law when they used excessive force in removing her from the tribal meeting. In support of her argument, she again cites the LESA, under which officers of the Oneida Police Department are "deputized by the Sheriff of Brown County to enforce state law and keep the peace within the County" and points to the citations she was issued by Defendant Prevost for violations of Wisconsin law. *See* Dkt. No. 19 at 5; Dkt. No. 19-1 at 9. These facts, she contends, show that the defendants were acting under color of state law at the time they physically removed her from the meeting.

It is true that in some circumstances tribal officers can act under color of state law and thus incur liability under § 1983. In *Bressi v. Ford*, for example, a non-Indian plaintiff sued four officers of a tribal police department under § 1983 after he was stopped and cited at a roadblock on a state highway crossing the Tohono O'odham Nation Indian Reservation, a federally recognized Indian tribe located in Arizona. 575 F.3d 891 (9th Cir. 2009). The tribal law allowed roadblocks to check for sobriety, drivers' licenses, registration, and possession of alcohol. *Id.* at 894. The plaintiff claimed, among other things, that the defendant tribal officers had violated his constitutional rights in stopping him without probable cause and detaining him for as much as four hours while acting under color of state law. The district court granted the tribal police officers' motion for summary judgment, holding that the roadblock was a purely tribal endeavor and that sovereign immunity barred the plaintiff's claims. On appeal, the Ninth Circuit reversed that portion of the district court's judgment.

9

In so ruling, the Court of Appeals emphasized the facts that the plaintiff was a non-Indian, the roadblock was set up on a state highway, an area over which the tribe had "no general power of exclusion," and the defendant officers had not confined themselves to inquiring whether or not the plaintiff was an Indian. *Id.* at 896–97. The tribal officers' general request for identification as part of the determination of whether the plaintiff was an Indian was permissible, the court held, but they specifically requested the plaintiff to show his drivers' license and immediately treated his refusal as a violation of state law. "These actions established, beyond any dispute of fact," the court held, "that the roadblock functioned not merely as a tribal exercise, but also as an instrument for the enforcement of state law." *Id.* at 897. The court thus concluded that, in operating the roadblock, the tribal officers were acting, at least in part, under color of state law. Although the court recognized that as a result of its ruling tribal officers who are authorized to enforce state as well as tribal law may be held to constitutional standards, it noted that this result was "an inevitable consequence of the accommodation of tribal authority over rights-of-way within Indian country and the rights of non-Indians to travel those rights-of-way." *Id.* at 898. "If a tribe wishes to avoid such constitutional restraints," the court concluded, "its officers operating roadblocks will have to confine themselves, upon stopping non-Indians, to questioning to determine non-Indian status and to detention only for obvious violations of state law." *Id.*

The key distinctions between *Bressi* and this case, of course, are that, unlike the plaintiff in *Bressi*, Genskow is a member of the Nation and the actions she complains of took place on tribal land. Genskow acknowledges that she is a member of the Nation, and thus she is bound by tribal law. Indian tribes have the "right to make their own laws and be governed by them." *Nevada v. Hicks*, 533 U.S. 353, 361 (2001). This inherent sovereign authority includes the power to determine tribal membership, regulate relations among its members, and punish tribal offenders.

10

*Id.* But this authority generally "do[es] not extend to the activities of nonmembers of the tribe." *Montana v. United States*, 450 U.S. 544, 565 (1981); *Hicks*, 533 U.S. at 359; *see also White Mountain Apache Tribe v. Bracker*, 448 U.S. 136, 144 (1980) ("When on-reservation conduct involving only Indians is at issue, state law is generally inapplicable, for the State's regulatory interest is likely to be minimal and the federal interest in encouraging tribal self-government is at its strongest."). *Bressi* has no application to claims against tribal officers for actions taken in the course of their official duties against tribal members on the tribe's own lands.

The fact that citations were issued to Genskow for violations of state law does not change the result. While an officer who issues a citation for a violation of state law is presumably acting under color of state law, it is important to note that only Officer Prevost, not the other defendants, is alleged to have issued Genskow the citations. Thus, Genskow's argument applies only to him. More importantly, the citations were issued after Genskow was removed from the Council Meeting and were ultimately dismissed. Genskow does not allege she was arrested or detained; only that she was physically removed from the meeting. In other words, the citations added nothing to her claim against the defendant officers. Although she seeks attorney's fees incurred in her effort to have the citations dismissed, it is clear from her complaint that there was probable cause to believe she was disruptive of the meeting, refused to leave when told to do so, and refused to comply with the direction of the officers. Issuance of citations for such conduct does not constitute a violation of any right guaranteed by the United States Constitution, whether under color of state law or not. The fact that she incurred attorney's fees in having the citations dismissed indicates the Brown County District Attorney was at least initially not willing to dismiss them; not that her rights were violated by their issuance.

Finally, wholly aside from the foregoing grounds for dismissal, the complaint fails to allege a violation of Genskow's constitutional rights. It is true that the use of excessive force by a law enforcement officer acting under color of law can amount to a violation of an individual's Fourth Amendment right against unreasonable seizures. *Graham v. Connor*, 490 U.S. 386, 388 (1989) ("Where, as here, the excessive force claim arises in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment, which guarantees citizens the right 'to be secure in their persons . . . against unreasonable . . . seizures' of the person."). But to state such a claim, a complaint must allege "more than labels and conclusions." *Twombly*, 550 U.S. at 555. As noted above, a simple, "formulaic recitation of the elements of a cause of action will not do." *Id*. Yet, that is all the complaint in this case contains.

The complaint fails to allege what the defendants did, other than carry Genskow from the meeting place and place her outside. There is no allegation that they struck her or used any force beyond what was necessary to remove her from the meeting. Although she seeks recovery for "pain and suffering from the personal injury," the complaint fails to allege what injury she sustained and how the defendants caused it. Genskow alleges that it was unnecessary to carry her out of the meeting, but it is also clear that the Chairman ordered her to leave and she refused. Genskow argues in her response to the defendants' motion that "[p]icking up the frail little-old-lady [Plaintiff] is excessive force regardless of how careful the Defendants are or were." Dkt. No. 19 at 3. She also states in her response that "[t]he Plaintiff did get injured and made subsequent visits to the St. Vincent's Emergency Room." *Id.* But it is not true that picking up a frail elderly person is excessive force regardless of how careful the defendants were. The standard for a Fourth Amendment excessive force claim is reasonableness. *Graham*, 490 U.S. at 395–96. Given her

12

apparent refusal to leave the meeting when told by the Chairman to do so, Genskow fails to allege what the defendants did in removing her from the meeting room that was unreasonably excessive. Absent some allegation of what force was used and why it was unreasonable to accomplish the task, the complaint fails to state a claim for excessive force. For this reason, as well, the defendants' motion will be granted.

### C. Indian Civil Rights Act

Genskow also suggests that she has stated a claim under the Indian Civil Rights Act (ICRA), citing 25 U.S.C. § 1302. Dkt. No. 19 at 4. The ICRA, like this country's Bill of Rights, lists a number of limitations on the authority of Indian tribes over individual members. For example, § 1302(a)(1) prohibits any Indian tribe from making or enforcing any law abridging freedom of speech, and § 1302(a)(8) prohibits a tribe from depriving any person of property without due process of law. Genskow contends that the defendants' actions at the direction of the Chairman may have violated both of these provisions of the ICRA.

The Supreme Court has held, however, that Congress did not create a federal cause of action for the enforcement of rights created by the ICRA, other than for relief via habeas corpus. *Martinez*, 490 U.S. at 71–72. Although the Court recognized that creating a federal cause of action for enforcement of all of the rights listed in the ICRA would no doubt be useful in securing compliance with § 1302, it concluded that federal enforcement would be plainly at odds with the congressional goal of protecting tribal self-government. *Id.* at 64. Absent an unequivocal statement by Congress of its intent to abrogate tribal sovereignty, the Court rejected the argument that the ICRA created such a cause of action. As a result, Genskow has no claim in this case under the ICRA.

### D. Motion to Add Party

Lastly, Genskow seeks to add Brown County Sheriff Todd Delain as a defendant in her lawsuit. (Dkt. No. 24). This, as well, would not change the outcome. Genskow claims that Sheriff Delain has direct supervisory capacity over the Oneida Police Department and thus is a proper party. But there is no respondeat superior or supervisory liability under § 1983. *See Iqbal*, 556 U.S. at 677 ("[R]espondent believes a supervisor's mere knowledge of his subordinate's discriminatory purpose amounts to the supervisor's violating the Constitution. We reject this argument. Respondent's conception of 'supervisory liability' is inconsistent with his accurate stipulation that petitioners may not be held accountable for the misdeeds of their agents. In a § 1983 suit or a *Bivens* action—where masters do not answer for the torts of their servants—the term 'supervisory liability' is a misnomer. Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct. In the context of determining whether there is a violation of a clearly established right to overcome qualified immunity, purpose rather than knowledge is required to impose *Bivens* liability on the subordinate for unconstitutional discrimination; the same holds true for an official charged with violations arising from his or her superintendent responsibilities."). There is no suggestion in the case that Sheriff Delain had any personal involvement in the removal of Genskow from the General Tribal Council Meeting and thus there is no basis for his personal liability.

The same is true if we consider the Sheriff's official capacity. In order to add Sheriff Delain in his official capacity, Genskow would need to plausibly allege that the Brown County Sherriff's Office was liable under the principles of *Monell v. Department of Social Services*, 436 U.S. 658 (1978). To do so, she must show that the County's policy, practice, or custom caused the alleged constitutional violation. *See Chatham v. Davis*, 839 F.3d 679, 685 (7th Cir. 2016).

Genskow has not done so. Her complaint alleges that she was removed at the direction of the Tribal Chairman. No allegations are made in Genskow's complaint about the Brown County Sherriff's Office. The complaint fails to establish an express municipal policy or widespread practice that would give rise to a *Monell* claim, and none of the allegations are sufficient to state a claim against Sheriff Delain personally. Genskow's motion to add Sheriff Delain will therefore be denied.

## CONCLUSION

For the foregoing reasons, Genskow's claims are barred under the doctrine of sovereign immunity. Additionally, her complaint fails to state a federal claim on which relief can be granted. Defendant's motion to dismiss (Dkt. No. 17) is therefore **GRANTED** and the action is dismissed. Genskow's motion to add a defendant (Dkt. No. 24) is also **DENIED**. The Clerk is directed to enter judgment accordingly.

**SO ORDERED** at Green Bay, Wisconsin this 6th day of April, 2020.

> s/ William C. Griesbach
> William C. Griesbach, District Judge
> United States District Court